UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL R. MATHIOUDAKIS,                )<br>     *Plaintiff*,                                             )<br>                                                           )<br>     *vs*.                                                  )<br>                                                           )<br>CONVERSATIONAL COMPUTING CORPORA- )<br>TION and STEPHEN RONDEL,                )<br>     *Defendants*.                                        ) | 1:12-cv-00558-JMS-DKL |

## **ORDER**

Presently before the Court in this breach of contract matter is Defendant Stephen Rondel's Motion to Dismiss Amended Complaint for Failure to State a Claim for Personal Liability of Corporate Obligation; Alternative Motion to Dismiss for Failure to Allege Fraud Claim With Specificity; and Alternative Motion to Dismiss for Failure to Show Reasonable Reliance With Respect to Fraud. [Dkt. 15.]  For the following reasons, the Court denies Mr. Rondel's motion.

## I.
### COMPLAINT ALLEGATIONS

Defendant Conversational Computing Corporation ("CCC") was a voice recognition technology company formed in approximately 2001. [Dkt. 13 at 2, ¶ 7.]  Mr. Rondel was the founder, Chairman, President, and Chief Executive Officer of CCC.  [*Id.* at 1-2, ¶ 3.]

In 2003 or 2004, Plaintiff Michael Mathioudakis had several business clients who were shareholders of a venture capital fund which invested in CCC.  [*Id.* at 3, ¶ 8.]  In late 2005 or early 2006, Mr. Rondel contacted Mr. Mathioudakis by telephone at least twice seeking a short-term loan for CCC.  [*Id.* at 3, ¶ 9.]  Mr. Mathioudakis alleges that Mr. Rondel told him on both of those occasions that a foreign citizen was investing more than a million dollars in CCC, and that Mr. Rondel had already received a wire transfer confirmation of those funds with a confirmation

number from Chase Bank. [*Id.* at 3, ¶ 10.] Mr. Mathioudakis alleges that Mr. Rondel told him the wire transfer was delayed due to Patriot Act[1] regulations and that, as soon as the funds were received, the money loaned by Mr. Mathioudakis would be paid back. [*Id.*]

On or about April 28, 2006, CCC executed an Unsecured Promissory Note ("<u>Note</u>"), which provided, among other things, that Mr. Mathioudakis would lend CCC $200,000, CCC would pay the loan in "one payment of all outstanding principal plus all accrued unpaid interest on May 29, 2006," and CCC would pay Mr. Mathioudakis a fee equal to ten percent of the total principal amount of the loan on May 29, 2006. [Dkts. 1-1 at 1; 13 at 3-4, ¶¶ 11-13.] The Note also contained additional late charges and provided that Mr. Mathioudakis would be entitled to attorneys' fees and costs in the event CCC did not repay the loan. [Dkt. 1-1 at 1-2.] The Note is signed on behalf of CCC by "Stephen Rondel Chief Executive Officer." [*Id.* at 2.]

Mr. Mathioudakis alleges that, at the time Mr. Rondel approached him for the loan, and when he lent the money to CCC, CCC was "severely undercapitalized, and needed funds in order to meet payroll." [Dkt. 13 at 4, ¶ 14.] He states that "Defendants were willing to borrow needed funds at high costs due to this undercapitalization[; i]n fact, the interest rate of ten percent per month set out in the attached promissory note was the rate proposed by [Mr. Rondel]." [*Id.*]

Mr. Mathioudakis alleges that, after entering into the Note and loaning the $200,000, he learned from CCC's Chief Financial Officer that Mr. Rondel's representations regarding the foreign investor were false – that the foreign investor had never wired funds because he had decided not to invest in CCC, and that CCC had never received a wire transfer confirmation. [*Id.* at 4, ¶ 15.] Mr. Mathioudakis alleges that he relied on Mr. Rondel's representations regarding the ex-

---

[1] The Patriot Act is the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (2001), and was enacted shortly after the terrorist attacks of September 11, 2001. The Act, among other things, imposes heightened security standards for money transfers.

istence of a foreign investor and CCC's receipt of a wire transfer confirmation, and that he never would have entered into the Note and made the loan had he known those representations were false. [*Id.* at 4, ¶ 16.]

CCC did not pay the principal sum of $200,000 to Mr. Mathioudakis by the May 29, 2006 maturity date, nor did it pay the interest due on that date. [*Id.* at 4, ¶ 17.] When Mr. Mathioudakis sent a demand letter to CCC for repayment of the Note, with accrued interest and other costs and fees, CCC made a partial interest payment for $80,000. [*Id.* at 4, ¶¶ 18-19.] CCC has not made any other payments, and Mr. Mathioudakis alleges that it became insolvent in 2010 or 2011. [*Id.* at 5, ¶¶ 20-21.]

Mr. Mathioudakis filed suit in April 2012, and filed the operative complaint in June 2012. [Dkts. 1; 13.] He asserts a claim for breach of contract, alleging that CCC and Mr. Rondel have failed to pay the principal amount of the Note and other interest payments due. [Dkt. 13 at 5-6.] He seeks the $200,000 principal amount, all outstanding and unpaid interest accruing at the rate of ten percent per month from April 28, 2006, late fees, and attorneys' fees and costs. [*Id.* at 6.][2]

## II.
### STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

---

[2] CCC has not appeared or otherwise participated in the lawsuit.

*Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. 544). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Iqbal*, 129 S.Ct. at 1951). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal*, 129 S.Ct. at 1950).

## III.
### DISCUSSION

Mr. Rondel argues that he cannot be held individually liable for a contract that CCC entered into, that Mr. Mathioudakis does not allege fraud with specificity, and that Mr. Mathioudakis does not allege that he "rightfully relied" upon Mr. Rondel's representations. The Court will address each argument in turn.

**A. Applicable Law**

As a federal court sitting in diversity, the Court will apply state substantive law and federal procedural law. *Ritchie v. Glidden Co.*, 242 F.3d 713, 720 (7th Cir. 2001). This Court will not expand the scope of state law beyond its current bounds. *See Estate of Moreland v. Dieter*, 576 F.3d 691, 700 (7th Cir.2009) ("[T]hose who seek novel applications of state law would be better advised to bring their claims in the state courts"). The Note contains a choice of law provision which states "[t]his note shall be construed, applied and enforced in accordance with the laws of the state of Indiana…." [Dkt. 1-1 at 2.] Accordingly, the Court will apply Indiana law to Mr. Mathioudakis' breach of contract claim.

### B.  Mr. Rondel's Individual Responsibility

Mr. Rondel argues that, because he signed the Note as an officer of CCC, he cannot be held individually liable for CCC's debt.  [Dkt. 16 at 4-5.]  Specifically, he states that there are only two exceptions to that general rule – where an officer has personally guaranteed the corporation's obligation, and where an officer has demonstrated disregard of the corporate form – and neither exception is alleged in the Amended Complaint.  [*Id.* at 5-6.]  Mr. Mathioudakis responds that the corporate form may be disregarded in particular circumstances, and that he has pled those circumstances here.  [Dkt. 17 at 3-5.]

Indiana courts are generally reluctant to disregard the corporate entity, and will do so "only to protect third parties from fraud or injustice resulting from doing business with a corporate entity."  *NNDYM IN, Inc. v. UV Imps., Inc.*, 2011 U.S. Dist. LEXIS 128300, *5-6 (S.D. Ind. 2011).  A plaintiff seeking to pierce the corporate veil must show that the corporate entity was "so ignored, controlled or manipulated that it was merely the instrumentality of another, and that the misuse of the corporate form would constitute a fraud or promote injustice."  *Gurnik v. Lee*, 587 N.E.2d 706, 710 (Ind. Ct. App. 1992).  In order to meet its burden, a plaintiff must sufficiently plead: "(1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form."  *NNDYM IN, Inc.*, 2011 U.S. Dist. LEXIS 128300 at *6.  *See also Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994).

Here, Mr. Mathioudakis has adequately alleged two of the types of allegations recognized as sufficient to justify piercing the corporate veil: that CCC was undercapitalized, [dkt. 13 at 4, ¶ 14 ("At the time [Mr.] Rondel was soliciting the [Note], and at the time the funds were paid to Defendants, [CCC] was severely undercapitalized, and needed funds in order to meet payroll")]; and that Mr. Rondel, as an officer of CCC, made a fraudulent representation, [*id.* at 4, ¶¶ 10, 15 (detailing Mr. Rondel's representations and alleging that "Plaintiff subsequently learned…that [Mr.] Rondel's representations were false, as the Defendants never had a wire transfer confirmation with any confirmation number from Chase Bank because the foreign investor had never wired funds to [Mr.] Rondel or [CCC], and ultimately decided not to invest")]. The Court finds these allegations sufficient to sustain Mr. Mathioudakis' breach of contract claim against Mr. Rondel based on a theory of piercing the corporate veil. *See Ketchem v. Am. Acceptance, Co., LLC*, 641 F.Supp.2d 782, 787 (N.D. Ind. 2008) (plaintiff's complaint withstood motion to dismiss where it "alleged facts that may form the basis for disregarding the corporate identity of [defendant]").[3]

---

[3] The Seventh Circuit Court of Appeals has instructed that, when considering issues relating to piercing the corporate veil, the law of the state of incorporation applies. *See Stromberg Metal Works v. Press Mechanical*, 77 F.3d 928, 933 (7th Cir. 1996). Even if this Court were to determine that this choice of law principle "trumps" the Note's Indiana choice of law provision, the result would be the same. Under Washington law, where CCC is incorporated, [dkts. 13 at 1, ¶ 2; 16 at 2], the corporate veil may be pierced where there is an abuse of the corporate form, through fraud, misrepresentation, or some "manipulation of the company to the member's benefit and creditor's detriment." *Shinstine/Assoc. LLC v. South-N-Erectors, LLC*, 2010 Wash. App. LEXIS 1976, *8-9 (Wash. App. 2010). Additionally, disregard of the corporate form must be "necessary to prevent an unjustified loss to the injured party." *Hawley v. Business Computer Training Inst.*, 2008 U.S. Dist. LEXIS 122303, *9 (W.D. Wash. 2008). Here, as discussed below, Mr. Mathioudakis has adequately alleged fraud, and he has also alleged that he suffered harm. Accordingly, if the Court were to apply Washington law to the issue of whether Mr. Mathioudakis has adequately alleged piercing the corporate veil, the end-result would be the same.

### C. Pleading Fraud With Particularity

Mr. Rondel and Mr. Mathioudakis agree that when a party attempts to pierce the corporate veil based on fraud, the fraud allegations must comply with Federal Rule of Civil Procedure 9(b). [Dkts. 16 at 6-7; 17 at 5.] *See, e.g., Southeast Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006); *Bd. of Trs. v. Foodtown, Inc.*, 296 F.3d 164, 173 n.10 (3d Cir. 2002). Mr. Rondel's sole basis for arguing that Mr. Mathioudakis has not pled fraud with sufficient particularity is that the Amended Complaint does not allege the specific dates that he contacted Mr. Mathioudakis to ask for a loan and made the alleged misrepresentations. [Dkts. 16 at 6-7; 20 at 8-10.]

Rule 9(b) requires plaintiffs to "'particularize' the fraud claim by alleging the 'who, what, when, where, and how' of the alleged fraud." *Comentis, Inc. v. Purdue Research Found.*, 765 F.Supp. 2d 1092, 1109 (N.D. Ind. 2011). Rule 9(b)'s particularity requirement, however, must be read in conjunction with Rule 8's liberal notice pleading standards, *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir. 1975), and in light of its purposes, which include "informing defendants of the nature of the claimed wrong and enabling them to formulate an effective response and defense," *Prince-Servance v. BankUnited*, 2007 U.S. Dist. LEXIS 81774, *15-16 (N.D. Ill. 2007). "Blind formalism" is not required in order to comply with Rule 9(b). *Id.* at *17. Rather, a court should consider whether the fraud allegations give defendant "fair notice" of the plaintiff's claims, *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 777-78 (7th Cir. 1994), and provide sufficient detail "to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate," *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

Mr. Mathioudakis alleges that "[i]n approximately late 2005 or early 2006 [Mr. Rondel] contacted [him] at least twice by telephone seeking a short-term loan for [CCC]" and that "[o]n each occasion" Mr. Rondel made representations regarding the existence of a foreign investor, CCC's receipt of a wire transfer confirmation, and a delay in transfer due to the Patriot Act. [Dkt. 13 at 3, ¶¶ 9-10.] Mr. Rondel's sole complaint with these allegations is that Mr. Mathioudakis did not provide enough detail regarding the date and time of the telephone conversations. [Dkts. 16 at 6-7; 20 at 8-10.] Notably, Mr. Rondel does not purport to be unaware of which telephone conversations Mr. Mathioudakis references in the Amended Complaint.

Both the Seventh Circuit Court of Appeals and District Courts sitting in the Seventh Circuit have found allegations similar to Mr. Mathioudakis' "late 2005 or early 2006" allegation to be sufficient under Rule 9(b). *See, e.g., Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (allegation that misrepresentation occurred "some time in late August or early September 2003" satisfied Rule 9(b)); *Comentis, Inc.*, 765 F.Supp.2d at 1110 ("in or about February 2009" provided sufficient detail under Rule 9(b)); *Greer v. Advanced Equities, Inc.*, 683 F.Supp.2d 761, 772 (N.D. Ill. 2010) ("the 'fall of 1999' or 'November 1999'…is specific enough under Rule 9(b)").

Mr. Mathioudakis' allegations that the misrepresentations occurred during at least two telephone calls in late 2005 or early 2006 satisfy the pleading requirements of Rule 9(b). The exact dates of those telephone calls are not required at the pleading stage, even under Rule 9(b)'s heightened standard. Mr. Mathioudakis' fraud allegations withstand Mr. Rondel's Motion to Dismiss based on failure to comply with Rule 9(b).

### D. Pleading "Reasonable Reliance"

Finally, Mr. Rondel argues that a plaintiff must demonstrate that he "rightfully relied" upon defendant's material representation, and that Mr. Mathioudakis has not pled this rightful

reliance. [Dkt. 16 at 8-10.] Specifically, Mr. Rondel asserts that any reliance was unjustified because: (1) based on Mr. Mathioudakis' allegations regarding the timing of the alleged misrepresentation and the date of the Note, any reliance would have lasted five months which was unreasonable, [*id.* at 8-9]; (2) Mr. Mathioudakis should not have relied upon a statement that CCC had received a confirmation number for the wire transfer because, if it had received such a confirmation number, it would not have needed a loan, [*id.* at 9]; and (3) Mr. Mathioudakis should have asked CCC for proof of the confirmation number before entering into the Note, [*id.* at 9-10]. Mr. Mathioudakis argues that determining whether he rightfully relied on Mr. Rondel's representations is not appropriate at the motion to dismiss stage, that he has clearly pled details regarding why CCC needed a loan (*i.e.*, Mr. Rondel's alleged representation that the Patriot Act had delayed transfer of the funds), and that courts in this District have rejected arguments similar to Mr. Rondel's argument that Mr. Mathioudakis should have investigated further and asked to see the wire transfer confirmation. [Dkt. 17 at 6-8.]

Under Indiana law, in order to maintain an action for fraud plaintiff must prove: "(1) a material representation of past or [existing] facts which[,] (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with intent to deceive, (5) was rightfully relied upon by Plaintiff, and (6) proximately caused injury to Plaintiff." *Acuity v. Nuthak Ins., LLC*, 2011 U.S. Dist. LEXIS 126147, *24 (S.D. Ind. 2011). A plaintiff's reliance and whether it was reasonable are questions of fact that are not appropriate for determination at the motion to dismiss stage. *IOM Grain, LLC v. Zea Global Seeds, SA*, 2011 U.S. Dist. LEXIS 121452, *28-29 (N.D. Ind. 2011).

Mr. Mathioudakis has pled that Mr. Rondel represented that a foreign investor was investing over one million dollars in CCC, that Mr. Rondel had a wire transfer confirmation of the

funds, that the transfer was delayed due to Patriot Act regulations, and that as soon as the funds were received, CCC would pay the Note. [Dkt. 13 at 3, ¶ 10.] Importantly, Mr. Mathioudakis specifically alleges that he "relied on these representations when making the loan to [CCC], and would not have made the loan to [CCC] had he known that [Mr.] Rondel's representations were false." [*Id.* at 4, ¶ 16.]

Any determination regarding whether Mr. Mathioudakis' alleged reliance was justified – based on the length of time between the representations and entering into the Note, the reasons for the loan, or the facts known to Mr. Mathioudakis at the time – is simply not proper at this stage in the litigation. *See Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 478 F.Supp.2d 1076, 1090 (S.D. Ind. 2007) ("the reasonableness of a party's reliance generally becomes a question of fact where the record evidence is susceptible, as it is in this case, to more than one interpretation"); *IOM Grain, LLC*, 2011 U.S. Dist. LEXIS 121452 at *31-32 ("the Court must accept as true the Plaintiff's well-pled allegation that it relied on the statements by [defendant], and the Court cannot determine as a matter of law that this reliance was unreasonable"). Accordingly, Mr. Rondel's Motion to Dismiss based on failure to plead rightful reliance is rejected.[4]

---

[4] Mr. Rondel also argues that Mr. Mathioudakis failed to attach the Note as an exhibit to the Amended Complaint, in violation of Local Rule 15-1(b). [Dkt. 20 at 1-2.] That rule provides that a motion to amend pleadings must "include as attachments the signed proposed amended pleading and proposed order" and "[a]mendments to a pleading must reproduce the entire pleading as amended." L.R. 15-1. In other words, when a party moves to amend a pleading, he or she must attach the entire amended pleading to the motion. Here, Mr. Mathioudakis properly filed the Amended Complaint under Federal Rule of Civil Procedure 15(a)(1)(B) without an actual *motion* to amend, thus making Local Rule 15-1 inapplicable. While Mr. Rondel is correct that Mr. Mathioudakis failed to attach the Note as an exhibit to the Amended Complaint, despite stating that it was attached as an exhibit, [dkt. 13 at 3, ¶ 12], the Court assumes this was an oversight. The Note is an exhibit to the original Complaint, [dkt. 1-1], and for purposes of ruling on Mr. Rondel's Motion to Dismiss, the Court – like Mr. Rondel, [dkt. 16 at 2, n.1] – has analyzed the Amended Complaint as if the Note were attached thereto.

## IV.
### CONCLUSION

For the foregoing reasons, Mr. Rondel's Motion to Dismiss Amended Complaint for Failure to State a Claim for Personal Liability of Corporate Obligation; Alternative Motion to Dismiss for Failure to Allege Fraud Claim With Specificity; and Alternative Motion to Dismiss for Failure to Show Reasonable Reliance With Respect to Fraud, [dkt. 15], is **DENIED**.  Mr. Mathioudakis is ordered to file, by **September 28, 2012**, a Second Amended Complaint which is identical in all respects to the Amended Complaint, but which attaches the Note as an exhibit.  The Second Amended Complaint shall be the operative complaint going forward.  Defendants' time for answering shall begin to run on the date the Second Amended Complaint is filed.

 .
 09/13/2012

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Thomas K. Caldwell
MADDOX HARGETT & CARUSO, PC
tkcaldwell@mhclaw.com

Mark E. Maddox
MADDOX HARGETT & CARUSO, PC
mmaddox@mhclaw.com

Robert W. York
ROBERT W. YORK & ASSOCIATES
rwyork@york-law.com